UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BURTON W. WIAND, as Receiver for
VALHALLA INVESTMENT PARTNERS,
L.P.; VIKING FUND, LLC; VIKING IRA
FUND, LLC; VICTORY FUND, LTD.;
VICTORY IRA FUND, LTD., AND
SCOOP REAL ESTATE, L.P.,

        Plaintiffs,

v.                              Case No. 8:10-CV-246-T-17MAP

BISHOP FRANK J. DEWANE, as Corporation Sole
of the Diocese of Venice in Florida; and DIOCESE
OF VENICE IN FLORIDA, an unincorporated
religious organization,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

      This case emanates from a Securities and Exchange Commission enforcement action aimed at dealing with the aftermath of a massive Ponzi scheme perpetrated by Arthur Nadel, a hedge fund manager.[1]  Burton W. Wiand ("Wiand"), the receiver appointed in that action, contends Bishop Frank J. Dewane and the Diocese of Venice in Florida (hereinafter together referred to as "Defendants") received charitable contributions from Nadel's scheme, and he has sued those entities under Florida Uniform Fraudulent Transfer Act ("FUFTA"; *see* Fla. Stat. 726.101, *et seq.*) and for unjust enrichment  to recover those funds.  Defendants move to dismiss the amended complaint for a host of reasons: the complaint fails to meet the specificity

---

[1] *See Securities and Exchange Comm. v. Arthur Nadel, et al.,* Case No.  8:09-cv-87-T-26TBM.

requirements of Rule 9(b); it fails to state a claim Rule 12(b)(6); certain FUFTA claims are time

barred; and because the Defendants are subsequent transferees who took in good faith, the actual

fraud claim is not voidable per Fla. Stat. § 726.109(1) (doc. 31).  After consideration, I

recommend the motion be granted with regard to certain transfers to Defendants that occurred

more than four years before the filing of Wiand's initial complaint; in all other respects, I

recommend their motion be denied.[2]   I also recommend the amended motion to strike allegations

relating to contributions made by Marguerite "Peg" Nadel pursuant to Rule 12(f) (doc. 37) be

denied.

*A.  Background*

Per the amended complaint, Nadel, through his charitable foundation, the Guy-Nadel

Foundation, Inc.  (The "Foundation"), and jointly with his wife, Marguerite "Peg" Nadel

(collectively the "Nadels"), made numerous contributions to Defendants.  *See* doc. 29-1 Ex. A. [3]

---

[2]  Per 28 U.S.C. § 636 and Local Rule 6.01(b), the district judge referred these motions to
me for a report and recommendation.

[3] Exhibit A lists the following money transfers at issue in this case:
September 20, 2004, Foundation transferred $3,000 to St. Jude Parish
March 22, 2006, Foundation transferred $100,000 to St. Jude Parish
May 28, 2006, Foundation transferred $5,000 to St. Jude Parish
October 24, 2006, Foundation transferred $5,000 to St. Jude Parish
November 2, 2006, Foundation transferred $4,500 to St. Jude Parish
December 4, 2006, Foundation transferred $10,000 to St. Jude Parish
February 26, 2007, Foundation transferred $5,000 to St. Jude Parish
December 18, 2007, Foundation transferred $100,000 to St. Jude Parish
August 20, 2007, Foundation transferred $10,000 to St. Jude Parish
November 7, 2007, Foundation transferred $2,000 to St. Jude Parish
November 19, 2007, Foundation transferred $1,000 to Celestino Gutierrez
February 5, 2008, Foundation transferred $1,000 to St. Jude Parish
October 24, 2008, Foundation transferred $2,000 to St. Jude Parish
December 18, 2004, Foundation transferred $5,000 to St. Jude Parish
January 12, 2009, Foundation transferred $10,000 to St. Jude Parish

Wiand alleges all these contributions emanated from the Ponzi scheme.  As a result, Wiand by his amended complaint seeks avoidance of these contributions, citing violations of FUFTA (*i.e.*, Fla. Stat. §§ 726.105(1)(a), 726.105(1)(b), and 726.106(1)) and unjust enrichment.  In sum, Wiand alleges that allowing Defendants to keep these contributions would be inequitable and unjust, including to the investors of the Hedge Funds as a whole, because all such money transferred or paid to Defendants, as a subsequent transferee, was diverted and misappropriated by Nadel in furtherance of his scheme. Wiand also alleges that all of the money transferred to Defendants, as subsequent transferees, was improperly diverted assets of one or more of the Hedge Funds.  *See* Amended Complaint, doc. 29, ¶¶ 98-101.

    *B.  Discussion*

       *1.  rules*

    The Federal Rules of Civil Procedure generally do not require a plaintiff to set out in detail the facts upon which he bases his claim.  Instead, all that ordinarily is required is that the

---

     December 30, 2003, Art and Peg Nadel transferred $100,000 to Spanish Ministry
     October 19, 2005, Art and Peg Nadel transferred $3,075.00 to Spanish Ministry
     December 21, 2004, Art and Peg Nadel transferred $100,000 to Spanish Ministry
     September 23, 2005, Foundation transferred $5,000 to Spanish Ministry
     December 6, 2005, Foundation transferred $15,000 to St. Martha Parish
     December 6, 2005, Foundation transferred $100,000 to Spanish Ministry
     March 25, 2006, Foundation transferred $5,000 to St. Martha Parish
     April 26, 2003, Art and Peg Nadel transferred $3,000 to St. Martha's Chapel
     March 4, 2004, Art and Peg Nadel transferred $3,000 to Annual Bishop Appeal
     May 11, 2004, Art and Peg Nadel transferred $5,000 to Diocese of Venice
     February 26, 2007, Foundation transferred $5,000 to Catholic Faith Appeal
     December 18, 2008, Foundation transferred $5,000 to Catholic Faith Appeal
     April 3, 2005, Foundation transferred $5,000 to St. Martha Catholic School
     December 19, 2008, Foundation transferred $1,000 to St. Martha Catholic School
     December 6, 2005, Foundation transferred $15,000.00 to St. Paul Parish

3

claimant set forth a "short and plain statement of his claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964 (2007). Hence, while a plaintiff attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, he is obliged to provide the "grounds" of his "entitlement to relief," more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nevertheless, the complaint still must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citation and quotations omitted). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (citation and quotations omitted).

Rule 9(b) imposes a more stringent pleading standard for a party alleging fraud. Nonetheless, courts relax Rule 9(b)'s heightened pleading requirement for plaintiffs who are trustees or receivers who are "third party outsiders to the fraudulent transactions" with only second-hand knowledge of the fraudulent acts. *See generally David M. Levine v. Walter Shacklett, et al.*, case no. 8:04-CV-1164-T-24EAJ (M.D. Fla. Feb. 4, 2005) (doc. 82, pp. 7-8) (order denying motion to dismiss, rejecting defendant's argument that rule 9(b) applies to fraudulent transfer claims); *Perlman v. Five Corners In vestors I* 2010 WL 962953, *4 (S.D. Fla. March 15, 2010) ("A fraudulent transfer claim, by contrast, involves a third-party defendant who has no relationship with the plaintiff, and thus the plaintiff usually has insufficient information to plead its claim with specificity. As a result, Rule 9(b)'s heightened pleading standard does not

4

apply to claims brought under FUFTA."); *Steinberg v. A Analyst Limited et al.,* 2009 WL 806780, *3-4 (S.D. Fla. March 26, 2009) (recognizing that Rule 9(b) should not be applied to cases where violations of FUFTA are asserted because unlike common law fraud claims, fraudulent transfer claims are asserted against a person or entity that did not deal directly with the plaintiff in the challenged transaction and there for the plaintiff generally possesses little or no information about the alleged fraudulent transfer); *David Levine v. Manfred Schillinger, et al.*, 01-6849-CIV-RYSKAMP, at pp. 5-6 (S.D. Fla. Dec. 21, 2001). *See also  In re Bernard Madoff Inv. v. Securities LLC*, 445 B.R. 206 (S.D.N.Y. 2011) (finding trustee adequately pled claim to recover fraudulent transfers from subsequent transferee and that court only need apply a rule 8 analysis).

### 2.  FUFTA

Wiand's first count asserts three alternative FUFTA violations: "actual fraud"  under §726.105(1)(a), and two separate theories of "constructive fraud" under §§ 726.105(1)(b) and 726.106(1).  Defendants argue the Court should dismiss these claims because the amended complaint fails to meet Rule 9(b)'s pleading requirements for fraud and fails to state a viable cause of action (the Rule 12(b)(6) argument).  Given that I find Rule 9(b)'s heightened pleading standard inapplicable for the reasons outlined above, only the Defendants' Rule 12(b)(6) arguments require further explanation.

### a.  actual fraud

Pursuant to Fla. Stat. §725.105(1)(a), "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the

obligation [ ] with actual intent to hinder, delay, or defraud any creditor of the debtor." Defendants asserts that count one is deficient because Wiand fails to plead with particularity that the transfers were made with the actual intent to hinder, delay or defraud creditors; fails to allege with factual specificity the alleged transfers made to Defendants; and fails to allege with specificity that any transfers made from Arthur Nadel to the Guy-Nadel Foundation and subsequently to Defendants were in furtherance of the alleged Ponzi scheme, that the charitable contributions were made to keep the Ponzi scheme ongoing with intent to hinder, delay or defraud investors, or that the perpetrator of the Ponzi scheme authored or directed the charitable contributions.

In cases like this, the requisite intent to hinder, delay or defraud may be established by the underlying scheme. *See United States v. Silvestri*, 409 F.3d 1311. 1317 n.6 (11th Cir. 2005) (in a Ponzi scheme, additional money invested by investors is used to pay returns to investors with the goal of attracting more investors); *In re World Vision Entertainment, Inc. v. R.W. Cuthill, Jr.*, 275 B.R. 641 (M.D. Fla. 2002) ("to prove actual fraud ... in cases involving a Ponzi scheme, the analysis is simplified because fraudulent intent is inferred"); *Hecht v. Malvern Preparatory School*, 716 F.Supp. 2d 395, 400-01, 402-03 (E.D.Pa. 2010) (denying motion to dismiss receiver's fraudulent transfer and unjust enrichment claims to recover donations to school from scheme proceeds); *Quilling v. Stark*, 2006 WL 1683442 (N.D. Tex 2006) (denying motion to dismiss complaint alleging Stark operated a Ponzi scheme and diverted scheme proceeds to family members, finding that less detail is required in the complaint because additional detailed information regarding transfers peculiarly within knowledge of Stark). The amended complaint adequately pleads the elements establishing a Ponzi scheme. For example, it states that

6

investments from approximately 370 investors in the Hedge Funds were pooled and commingled as part of the scheme (amended complaint, ¶¶ 86-91); the Hedge Funds never generated the trading gains represented to the investors (amended complaint, ¶¶ 13, 92-106); money was transferred from the scheme to the Foundation and the Joint Account (amended complaint, ¶¶ 107-110); the date, amount, transferor, and transferee of each transfer Wiand seeks to recover from Defendants (amended complaint, exhibit A); all money transferred to Defendants as a subsequent transferee were improperly diverted assets from one of more of the Hedge Funds (amended complaint, ¶ 110); no reasonably equivalent value was provided for scheme proceeds received by Defendants (amended complaint, ¶¶ 108, 117); and the remaining assets in the Hedge Funds were unreasonably small in relation to the transfers (amended complaint, ¶ 116).

Moreover, the amended complaint adequately alleges the requisite "actual intent to hinder, delay, or defraud any creditor" pursuant to Fla. Stat. §726.105(1)(a).  Here, the relevant intent is the one associated with the "initial" transfer out of the Hedge Funds.  The amended complaint alleges that those transfers occurred as part of the scheme, and consequently, establishes the requisite intent to hinder, delay or defraud creditors.  Wiand alleges that Defendants received contributions originating from the investments in the Hedge Funds; Defendants did not provide any value whatsoever in return for these contributions; and the remaining assets of the Hedge Funds were unreasonably small in relation to the transfers to Defendants.  Wiand further alleges that "[a]ll such money transferred or paid to Defendant, as a subsequent transferee, was diverted and misappropriated by Nadel in furtherance of his scheme. Thus, all of the money transferred to Defendant, as a subsequent transferee, was improperly diverted assets of one or more of the Hedge Funds."  Amended Complaint, ¶ 110 (incorporated

7

by reference into Count I via ¶ 111).  The transfers were made to Defendants from the Foundation and from a personal checking account funded with proceeds from Nadel's scheme.[4] Amended Complaint, ¶ 107 (incorporated by reference into Count I via ¶ 111).  Certainly, the allegations are sufficient, providing ample identification of the circumstances constituting fraud so that Defendants can prepare an adequate answer.  *See Hecht, supra,* 716 F.Supp.2d at 400. *See also In re Bernard Madoff Inv. v. Securities LLC*, 445 B.R. 206, 235-36 (S.D.N.Y. February 24, 2011) (finding claim to recover fraudulent transfers from subsequent transferee provided "fair notice" of the subsequent transfers sought to be recovered adequate per Rule 8).[5]

As to Defendants' assertion that Wiand fails to describe the legal theory employed to avoid transfers, it seems Defendants' complaint is that the allegations in count one commingle violations of Fla. Stat. § 726.105(1)(a) of actual fraud with violations of Fla. Stat. § 726.105(1)(b) and §726.106(1) of constructive fraud.  While the amended complaint may not be a model of clarity, it states claims for violations of both Fla. Stat. § 726.105(1)(a), actual fraud, and Fla. Stat. § 726.105(1)(b) and §726.106(1), constructive fraud.  And, the Federal Rules of Civil Procedure permit alternative pleading.  *See* Fed.R.Civ.P. 8(a)(3) (relief sought "may include relief in the alternative or different types of relief"); Fed.R.Civ.P. 8(d)(2) ("A party may set out 2 or more statements of a claim ... alternatively ... either in a single count ... or in separate

---

[4] Defendants asserts that the Foundation's annual reports indicate that Nadel was but one of its officers/ directors, and implies that transfers from the Foundation to Defendants were not necessarily derived from Nadel's scheme or directed by Nadel.  At this stage, however, I rely solely upon the allegations in the amended complaint.

[5] Although Defendants argue that dismissal is warranted due to Wiand's failure to allege that the transfers to the Foundation and subsequently to Defendants were in furtherance of the alleged Ponzi scheme, I find such allegations unnecessary per FUFTA.  As stated above, Wiand adequately pled a cause of action under FUFTA sufficient to satisfy Rule 8's requirements.

ones"); Fed.R.Civ.P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency").  To the extent the Defendants take issue with the factual specificity the alleged transfers, I do not find that argument persuasive.  Exhibit A to the amended complaint sets forth the dates, amounts, transferor and transferee of each transfer amount Wiand seeks to recover from Defendants.  I find this to be sufficient for pleading purposes.

### b.  constructive fraud

In contrast to actual fraud, which looks to the debtor's state of mind, constructive fraud focuses on the debtor's financial condition.  *Akanthos Capital Management, LLC v. CompuCredit Holdings Corp.*, 2011 WL 987353, *14 (N.D. Ga. March 15, 2011).   In the main, Defendants contend the amended complaint lacks allegations linking the receivership entities and the donations to Defendants and that these charitable donations were made in furtherance of the alleged underlying Ponzi scheme.  A transfer is fraudulent under a theory of constructive fraud if the transferor does not receive reasonable value in exchange and the transferor either (1) was engaged or was about to engage in a business or a transaction for which the remaining assets of the transferor were unreasonably small in relation to the business or transaction or (2) intended to, believed, or reasonably should have believed that he or she would incur debts beyond his or her ability to pay them as they became due.  *See* Fla. Stat. §726.105(1)(b)(1)-(2).[6]  Alternatively,

---

[6]  Section 726.105 provides:
(1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
…
(b) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor ...

a transfer is fraudulent when a debtor makes a transfer without receiving a reasonably equivalent

value in exchange for the transfer and the debtor was insolvent as a result of the transfer.  *See*

Fla. Stat. 726.106(1).[7]

Here, count one of the amended complaint sufficiently states a constructively fraudulent

transfer claim because it alleges that Nadel caused transfers to be made and Nadel, the Fund

Managers, and the Hedge Funds were engaged or were about to engage in a business or

transaction for which their remaining assets were unreasonably small in relation to the business

or transaction, or Nadel intended that he, the Fund Managers, and/or the Hedge Funds incurred,

or believed or reasonably should have believed they would incur, debts beyond their ability to

pay as they became due.  *See* Amended Complaint,  ¶ 116.   Count one further alleges that neither

the Hedge Funds nor any other person or entity received reasonably equivalent value in exchange

for the transfers from the Hedge Funds to the Nadels and the Foundation.  *See* Amended

Complaint, ¶¶ 107, 117.   Moreover, as Wiand notes, as a matter of law, a Ponzi scheme is

insolvent from the scheme's inception and detailed factual allegations in the amended complaint

also form an adequate basis for Wiand's FUFTA claims under Fla. Stat. §§ 726.105(1)(b) and

726.106(1), each of which requires a showing of insolvency, unreasonably few assets, or an

---

[7]  Section 726.106 provides:

(1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor
whose claim arose before the transfer was made or the obligation was incurred if
the debtor made the transfer or incurred the obligation without receiving a
reasonably equivalent value in exchange for the transfer or obligation and the
debtor was insolvent at that time or the debtor became insolvent as a result of the
transfer or obligation.

inability to pay debts, the latter two of which are also established by allegations of the scheme operated by Nadel through the Hedge Funds, Scoop Management and other Receivership entities. *See In re Burton Wiand,* 2008 WL 818504, *6 (M.D. Fla. 2008) ("... Receivership Entities are considered insolvent from their very inception by virtue of being used to perpetrate a Ponzi scheme");  *Stenger v. World Harvest Church*, 2006 WL 870310 at *10 quoting *In re Indep. Clearing House Co.*, 77 B.R. 843, 847 (N. D. Utah 1987); accord *In re Ramirez Rodriguez*, 209 B.R. 424, 430-31 (S.D. Tex. 1997) ("The promised rate of return renders a Ponzi scheme operator insolvent from the scheme's inception, because the returns exceed any legitimate investments."); *Stenger v. Rodgers*, 2006 WL 449151, *7 (N.D. Ga. 2006) (Ponzi scheme insolvent from day one); *see also In re Fin. Federated Title & Trust,* 309 F.3d 1325, 1332 (11th Cir. 2002) (acknowledging principle)**.**  The amended complaint also sets forth that Nadel formed the Foundation exclusively from proceeds of his Ponzi scheme (amended complaint ¶ 107) and that both the Foundation and the Nadels transferred funds to Defendants consisting of proceeds from Nadel's Ponzi scheme (amended complaint ¶ 108).

Accepting the allegations in the amended complaint as true, I find that Wiand has stated claims for constructive fraud under Fla. Stat. §§ 726.105(1)(b) and 726.106(1).  *See Special Purpose Accounts Receivable Cooperative Corp. v. Prime One Capital Co., L.L.C.*, 2007 WL 2826603 (S.D. Fla. 2007) (denying motion to dismiss constructive fraud claim, finding "limited access to information at the pleading stage should not hinder Plaintiff from brining their claims against these alleged subsequent transferees");  *Akanthos, supra* (finding receiver stated *prima facie* case of constructive fraud under UFTA despite fact that defendants "dispute many of the

11

Receiver's allegations ... factual disputes of this nature are not appropriate considerations on a motion to dismiss ... allegations in the Receiver's complaint are presumed true at this stage, and all reasonable factual inferences must be construed in their favor").

### c.  Fla. Stat. §766.110

While Wiand is not required to negate an affirmative defense in the complaint, a Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate when it is "apparent from the fact of the complaint" that the claim is time-barred.  *Steinberg v. A Analyst Ltd.*, 2009 WL 806780, *8 (S.D. Fla. 2009) (finding transfer that occurred more than four years prior to the filing of the original complaint barred with regard to constructive fraud claims under Fla. Stat. § 726.105(1)(b) and 726.106(1)) citing *La Grasta v. First Union Securities, Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).  Defendants maintain that "certain" transfers under §§ 726.105(1)(b) and 726.106(1) are barred as untimely based on the applicable four-year statutes of limitation, namely, Fla. Stat. § 726.110.[8]  That provision, in relevant part, states:

---

[8]  In count one, Wiand alleges that the "transfers of scheme proceeds that Nadel caused to be made and which funded contributions to Defendant were inherently fraudulent because the transfers were made as part of the scheme."  Wiand further alleges that "[t]hose transfers were fraudulent under Florida Statutes § 726.105(1)(a) because Nadel caused those transfers to be made with actual intent to hinder, delay, or defraud creditors of Nadel, the Fund Managers, and/or the Hedge Funds. ... Those transfers also were fraudulent under Florida Statutes § 726.105(1)(b) because: (a) Nadel caused those transfers to be made; and (b)(i) Nadel, the Fund Managers, and the Hedge Funds were engaged or were about to engage in a business or transaction for which their remaining assets were unreasonably small in relation to the business or transaction; or (ii) Nadel intended that he, the Fund Managers, and/or the Hedge Funds incur, or believed or reasonably should have believed they would incur, debts beyond their ability to pay as they became due. ... Those transfers also were fraudulent under Florida Statutes § 726.106(1) because neither Nadel, the Fund Managers, nor the Hedge Funds received a reasonably equivalent value in exchange for those transfers, and Nadel, the Fund Managers, and

A cause of action with respect to a fraudulent transfer or obligation ... is extinguished unless action is brought-
(1) Under §726.105(1)(a), within 4 years after the transfer was made or the obligation was incurred or, if later, within 1 year after the transfer or obligation was or could reasonably have been discovered by the claimant ...
(2) Under § 726.105(1)(b) or § 726.106(1), within 4 years after the transfer was made or the obligation was incurred ...

Applying this statute, Wiand can bring claims for actual fraud under § 726.105(1)(a) by commencing an action within four years after the transfer or within one year after he discovered it.  Wiand's claims for constructive fraud under §§ 726.105(1)(b) and 726.106(1) must be brought within four years after the transfer because the applicable statute of limitations period set forth in § 726.110(2) does not include the same discovery provision contained within § 726.110(1) permitting causes of action for actual fraud under § 726.105(1)(a) to be commenced within one year after discovery.  A well-settled principle of statutory construction provides that when the legislature has included a specific provision in one part of the statute and omitted it in another part of the same statute, the court must assume the omission was intentional.  Hence, I will not read the omitted discovery provision into § 726.110(2).  Likewise, I find the doctrine of equitable tolling may not be applied to the FUFTA §§ 726.105(1)(b) or 726.106(1) claims as these statutes make no allowances for tolling based on Wiand's discovery of the transfers, and I will not contravene the intent of the Florida legislature. *See Steinberg v. A Analyst Limited, et al.*, 2009 WL 806780 (S.D. Fla. March 26, 2009) (holding that the doctrine of equitable tolling may not be applied to FUFTA § 726.105(1)(b) claims) citing *Parragon Health Servs. Inc. v. Cent.*

---

the Hedge Funds were insolvent at all relevant times."  Amended Complaint, ¶¶105-108.

*Palm Beach Cmty. Mental Health Ctr.,* 859 So. 2d 1233, 1235-36 (Fla. 4th DCA 2003) (holding

that a cause of action under §726.106(2) was extinguished one year after date of transfer because

one year discovery provision under § 726.110(1) does not apply to § 726.110(3)).

Accordingly, I conclude that the transfers to the Defendants that occurred more than four

years before Wiand's initial complaint was filed on January 20, 2010, are time-barred for the

FUFTA §§ 726.105(1)(b) or 726.106(1) claims.[9]  *Steinberg, supra,* at *8 (finding transfer that

occurred more than four years prior to the filing of the original complaint barred with regard to

constructive fraud claims under Fla. Stat. § 726.105(1)(b) and 726.106(1)).

### d.  subsequent transferee

The Uniform Fraudulent Transfers Act, the basis for Florida's FUFTA statutes, approved

by the National Conference of Commissioners on Uniform State Laws in 1984 as a successor to

the Uniform Fraudulent Conveyances Act (UFTA), contained important changes, including a

new provision making transfers to insiders voidable and enhancing creditors' remedies against

---

[9]  The Diocese does not specify which transfers are untimely.  However, I find that the transfers dated *before* January 20, 2006 (four years prior to the filing of the original complaint) are untimely.  These include:

    September 20, 2004, Foundation transferred $3,000 to St. Jude Parish
    December 30, 2003, Art and Peg Nadel transferred $100,000 to Spanish Ministry
    October 19, 2005, Art and Peg Nadel transferred $3,075.00 to Spanish Ministry
    December 21, 2004, Art and Peg Nadel transferred $100,000 to Spanish Ministry
    September 23, 2005, Foundation transferred $5,000 to Spanish Ministry
    December 6, 2005, Foundation transferred $15,000 to St. Martha Parish
    December 6, 2005, Foundation transferred $100,000 to Spanish Ministry
    April 26, 2003, Art and Peg Nadel transferred $3,000 to St. Martha's Chapel
    March 4, 2004, Art and Peg Nadel transferred $3,000 to Annual Bishop Appeal
    May 11, 2004, Art and Peg Nadel transferred $5,000 to Diocese of Venice
    April 3, 2005, Foundation transferred $5,000 to St. Martha Catholic School
    December 6, 2005, Foundation transferred $15,000.00 to St. Paul Parish

transferees.  This new provision in UFTA created a commonsense defense to an attack based on

an allegedly actual intent to hinder, delay or defraud creditors.  "Under UFTA §8(a) [basis for

and identical to FUFTA §726.109(1)(a)], a transfer made with such intent is not voidable against

'a person who took in good faith and for a reasonably equivalent value' or against any

subsequent transferee.  Thus, although UFTA §4(a)(1) [basis for and identical to FUFTA

§726.105(1)(a)] focuses on the transferor's intent, UFTA §8(a) [and FUFTA §726.109(1)(a)]

insulates the innocent transferee, thereby making only the collusive transferee liable."  The

Uniform Fraudulent Transfer Act: An Introductory Critique, 62 Am. Bankr. L.J. 87 (Winter,

1988).  *See also Avoidance of Preferences and Fraudulent Transfers*, 547 Practising Law

Institute 381 (July-Aug. 1990) (citing UFTA §8 Comment 1) ("Section 8(a) of the UFTA is an

adaptation of the UFCA and provides that a transferee of an 'actual intent' fraudulent transfer has

an absolute defense if he took the transfer in good faith and for a reasonably equivalent value.

The burden of proof of such defense is on the transferee.").

Fla. Stat.  §726.109(1) provides that "a transfer or obligation is not voidable under s.

726.105(1)(a) against a person who took in good faith and for a reasonably equivalent value or

against any subsequent transferee or obligee."  Relying on this defense, Defendants assert that

any contributions they received were in good faith and were subsequent transfers, separate and

distinct from the initial transfers from Nadel to the Foundation and, thus, are not voidable.

Defendants point out that many of the transfers listed in Exhibit A to the amended complaint

identify the transferor as the Guy-Nadel Foundation, Inc., a non-profit corporation organized in

2003, separate and distinct from Nadel individually.  Defendants state that Nadel operated the

Foundation along with several board members – specifically, his wife and two step children –

who were in positions to collect for or add to funding for the Foundation and were able to make charitable contributions on its behalf.

The operative standard for Rule 12(b)(6) purposes is whether the factual allegations are enough to raise a right to relief above the speculative level. *Twombley,* 550 U.S. at 555; *Edwards v. Prime, Inc.*, 602 F.3d 1276,1291 (11th Cir. 2010). "Stated differently, the factual allegations in the complaint 'must possess enough heft' to set forth 'a plausible entitlement to relief.'" *Id.* And when considering a 12(b)(6) motion to dismiss, a court looks only to the facts alleged in the complaint and not beyond. *See Emory v. Peeler*, 756 F2d 1547, n.3 (11th Cir. 1985). The complaint meets this standard.

Wiand asserts in the amended complaint:

Defendants are a charitable organization that received funds from both the Foundation and the Nadels, which consisted of proceeds from Nadel's scheme. As detailed in Exhibit A attached hereto and incorporated herein, based on the records reviewed by the Receiver as of the filing of this complaint, between 2004 and 2008, Defendants received contributions originating with the Hedge Funds, and Defendants did not provide any value whatsoever in return for the contributions. ... To allow Defendants to keep these contributions would be inequitable and unjust, including to the investors of the Hedge Funds as a whole. All such money transferred or paid to Defendants, as subsequent transferees, was diverted and misappropriated by Nadel in furtherance of his scheme. Thus, all of the money transferred to Defendants, as subsequent transferees, was improperly diverted assets of one or more of the Hedge Funds.

*See* Amended Complaint, ¶¶ 108-110.

Per Fla. Stat. §726.109(1) a transfer under §726.105(1)(a) is not voidable only if the transferee took "in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee." The Defendant bears the burden of proving this affirmative defense. *See* UFTA §8(a) Comment 1 ("The person who invokes this defense carries the burden of

establishing good faith and the reasonable equivalence of the consideration exchanged").  Courts

recognize that at this early juncture, it is premature to decide this issue.  *See In re World Vision*

*Entertainment, Inc.*, 275 B.R. 641, 659-60 (M.D. Fla. 2002) (protection of good faith defense

decided on case-by-case basis established by looking at both actual and imputed knowledge of

recipient of transfer); *Obermaier v. Arnett*, 2002 WL 31654535, *4 (M.D. Fla. 2002) (holding

that receiver adequately pled causes of action for fraudulent transfer and unjust enrichment and

court need not determine whether the defenses can be asserted against receiver at motion to

dismiss stage); *Perlman v. Five Corners Investors I*, 2010 WL 962953, *3 (M.D. Fla. March 15,

2010) (denying motion to dismiss and noting that "good faith defense is an affirmative defense,

the burden of which is on defendants to prove");  *Malvern, supra*, 716 F.Supp. 2d at 401

(denying motion to dismiss claim to avoid fraudulent transfers from Ponzi assets to Foundation

to Malvern Prep and finding defendants had burden to invoke and prove good faith defense).  *See*

*also Steinberg v. Barclay's Nominees (Branches) Ltd.*, 2008 WL 4601042, *8 (S.D. Fla. 2008)

(denying motion to dismiss FUFTA claims where receiver's complaint alleged defendant was

either an initial or subsequent transferee of the transfers or was the beneficiary of the value of the

transfers).   Looking at the allegations in the amended complaint, Wiand was under no obligation

to allege the Defendants lacked good faith and has adequately alleged that Defendant did not

provide any value whatsoever in return for the contributions.  Accepting that as true, as I must, it

is premature to consider the Defendants' good faith defense.  Therefore, I recommend the motion

to dismiss be denied with regard to Defendants' assertion that Wiand cannot recover because it is

a subsequent transferee.  *See Obermaier, supra*, 2002 WL 31654535, *4 (finding that whether

equitable defenses could be asserted against receiver or precluded successful prosecution of case

17

may be appropriate for summary judgment but must be rejected at motion to dismiss stage because facts pled do not compel finding in defendants' favor on such defenses).

### 3.  count two

In count two, Wiand alleges "Defendants received a benefit, when in furtherance and during the course of the scheme, the Hedge Funds' money was wrongfully transferred to Defendant as contributions" and "has been unjustly enriched at the expense of the Hedge Funds (and ultimately, their investors) in the amount of the contributions received by Defendants." Amended Complaint, ¶¶ 123, 126.  Defendants posit that count two fails to state a cause of action because it suffers from the same unspecified pleading inadequacies as count one and Wiand has an adequate remedy at law, namely, count one.  Notably, the Defendants do not argue that Wiand has failed to plead the requisite elements of unjust enrichment.  Irrespective, I find the Defendants' arguments meritless.  *See In re Burton Wiand Receivership Cases Pending in the Tampa Division of the Middle District of Florida*, 2007 WL 963165, *6 (M.D. Fla. 2007) ("this Court is reluctant to dismiss a claim that is equitable in nature at this stage of the proceedings."). For the same reasons already stated as to count one, Wiand states a cause of action in count two. Moreover, Rule 8(a)(3) permits alternative pleading.  *See* Fed.R.Civ.P. 8(a)(3) (relief sought "may include relief in the alternative or different types of relief"); Fed.R.Civ.P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency"); *Adelphia Cable Partners, L.p. v. E & A Beepers Corp.*, 188 F.R.D. 662, 666 (S.D. Fla. 1999) (Federal Rules of Civil Procedure "do not prohibit the pleading of an equitable remedy alongside a claim for monetary remedy ... Although the equitable relief ultimately may not be awarded where there exists an adequate remedy at law, the Receiver certainly may plead alternative equitable relief.").

18

Defendants also assert that count two should be dismissed because it is time-barred by Fla. Stat. § 95.11(3)(k) which requires actions on a contract, obligation, or liability not founded on a written instrument to be commenced within four years. *See Brown v. Nationscredit Financial Servs. Corp.*, 32 So.3d 661, 662 n.1 (Fla. 1st Dist. Ct. App. 2010); *Swafford v. Schweitzer*, 906 So. 2d 1194, 1195 (Fla. 4th DC A2005) (noting that statute of limitations for unjust enrichment claim is four years under Fla. Stat. §95.11(3)(k)). Defendants argues that the transfers dated December 28, 2004, and December 6, 2005, are time-barred, as Wiand filed the original complaint on January 21, 2010, more than four years after these transfers.

Insofar as Wiand argues that the delayed discovery rule should apply with respect to his unjust enrichment claim, Fla. Stat. § 95.031 provides: "Except as provided in subsection (2) and in s. 95.051 and elsewhere in these statutes, the time within which an action shall be begun under any statute of limitations runs from the time the cause of action accrues." Section 95.031(2) provides for a delay in the start of the limitations period for actions founded upon fraud and actions for products liability under Section 95.11(3). However, Wiand does not point to any statute permitting application of a delayed discovery rule to actions for unjust enrichment. The delayed discovery rule, hence, applies only to actions founded upon fraud, and is inapplicable to actions like Wiand's count II unjust enrichment claim governed by Fla. Stat. §95.11(3)(k). Such claims are not afforded delayed discovery, and accrue "when the last element constituting the cause of action occurs." *In re Burton Wiand Receivership Cases Pending in the Tampa Division of the Middle District of Florida*, Nos. 8:05-cv-1856-T-27MSS et al., 2008 WL 818504, at * 8 (March 26, 2008) (citing *Barbara G. Banks, P.A. v. Thomas D. Lardin, P.A.*, 938 So.2d 571, 577 (Fla. 4th DCA 2006) and *Swafford*, 906 So.2d at 1195-96) (rejecting application of delayed

discovery doctrine to unjust enrichment action).   Under Florida law, an action for unjust

enrichment accrues when the benefit is conferred.  *Id.* citing *Barbara G. Banks , P.A. v. Thomas*

*D. Lardin, P.A.*, 938 So. 2d 571, 577 (Fla. 4th DCA 2006); *Swafford,* 906 So. 2d at 1195-96.

Thus, the limitations period began when the transfers were made.  *See Davis v. Monahan*, 832

So.2d 708, 711 (Fla. 2002) (refusing to apply discovery rule to delay accrual of causes of action

for breach of fiduciary duty, conversion, civil conspiracy, and unjust enrichment because the

statutory scheme did not call for application of the discovery rule to those claims; "To hold

otherwise would result in this Court rewriting the statute, and, in fact, obliterating the statute.")

Moreover, the limitations period for a claim of unjust enrichment "may be tolled only for the

reasons set forth in Fla. Stat. § 95.051."  *Id.* at *9 (citations omitted).

 As Wiand makes no argument that tolling is appropriate under Fla. Stat. § 95.051, I

conclude his unjust enrichment claim as to transfers that were made or received more than four

years after Wiand filed the initial complaint on January 21, 2010, are time-barred.[10]

   *4. Marguerite Nadel*

---

[10]Hence, as to count two, the unjust enrichment claims arising from these transfers dated
*before* January 20, 2006 are untimely:
 September 20, 2004, Foundation transferred $3,000 to St. Jude Parish
 December 30, 2003, Art and Peg Nadel transferred $100,000 to Spanish Ministry
 October 19, 2005, Art and Peg Nadel transferred $3,075.00 to Spanish Ministry
 December 21, 2004, Art and Peg Nadel transferred $100,000 to Spanish Ministry
 September 23, 2005, Foundation transferred $5,000 to Spanish Ministry
 December 6, 2005, Foundation transferred $15,000 to St. Martha Parish
 December 6, 2005, Foundation transferred $100,000 to Spanish Ministry
 April 26, 2003, Art and Peg Nadel transferred $3,000 to St. Martha's Chapel
 March 4, 2004, Art and Peg Nadel transferred $3,000 to Annual Bishop Appeal
 May 11, 2004, Art and Peg Nadel transferred $5,000 to Diocese of Venice
 April 3, 2005, Foundation transferred $5,000 to St. Martha Catholic School
 December 6, 2005, Foundation transferred $15,000.00 to St. Paul Parish

In the amended complaint, Wiand alleges that "Nadel and his wife Marguerite "Peg" Nadel (collectively, the "Nadels"), made charitable contributions from their personal joint checking account.  The checking account was similarly funded with proceeds of Nadel's scheme."  *See* amended complaint, ¶ 107.  By the motion to dismiss and by the amended motion to strike (doc. 37), the Defendants assert that the contributions made by Marguerite Nadel through her personal checking account, bear no relevance to the instant matter, and are immaterial and impertinent.  The Defendants also assert that the account was not a joint account of the Nadels, but instead Marguerite's personal account containing her salary or wages earned as an employee of Scoop Management.  Essentially, the Defendants posit the funds transferred from the Nadels' joint account were not scheme proceeds.

Pursuant to Fed.R.Civ.P 12(f), this Court may strike allegations of redundant, immaterial, impertinent, or scandalous matters.  A motion to strike is appropriately granted only if "the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party. ... Because this standard is rarely met, motions to strike are generally disfavored by the Court."  *F.T.C. v. Alcoholism Cure Corp.*, 2010 WL 4840046, *2 (M.D. Fla. 2008) citing *U.S. ex rel. Chabot v. MLU Servs., Inc.*, 544 F.Supp.2d 1326, 1330 (M.D. Fla. 2008).  "A disputed question of fact cannot be decided on a motion to strike.  It is true, also, that when there is no showing of prejudicial harm to the moving party, the courts generally are not willing to determine disputed and substantial questions of law upon a motion to strike. Under such circumstances, the court may properly, and we think should, defer action on the motion and leave the sufficiency of the allegations for determination on the merits."  *Augustus v.*

*Board of Public Instruction*, 306 F.2d 862, 866 (5th Cir. 1962).[11]

At this early juncture, I find that the allegations in question clearly have a possible relationship to the controversy.  Moreover, the Defendants have not alleged they are prejudiced by the allegations, and rely on evidence and facts outside the four corners of the complaint in support of their motion.  Upon consideration, therefore, I find the Defendants' arguments reach beyond the scope of Rule 12(f), and therefore recommend the amended motion to strike be DENIED.  The Defendants will have an opportunity to deny the factual and legal assertions in the amended complaint.

Accordingly, it is hereby

RECOMMENDED:

1.  The motion to dismiss be GRANTED to as to Wiand's constructive fraud claims (count one) brought under FUFTA §§ 726.105(1)(b) or 726.106(1), and his unjust enrichment claims (count two) pertaining to the following transfers dated *before* January 20, 2006 (four years prior to the filing of the original complaint):

September 20, 2004, Foundation transferred $3,000 to St. Jude Parish

December 30, 2003, Art and Peg Nadel transferred $100,000 to Spanish Ministry

October 19, 2005, Art and Peg Nadel transferred $3,075.00 to Spanish Ministry

December 21, 2004, Art and Peg Nadel transferred $100,000 to Spanish Ministry

September 23, 2005, Foundation transferred $5,000 to Spanish Ministry

December 6, 2005, Foundation transferred $15,000 to St. Martha Parish

---

[11]   The decisions of the United States Court of Appeals for the Fifth Circuit issued prior to the close of business on September 30, 1981, are binding as precedent in the Eleventh Circuit. *Bonner v. Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

December 6, 2005, Foundation transferred $100,000 to Spanish Ministry

April 26, 2003, Art and Peg Nadel transferred $3,000 to St. Martha's Chapel

March 4, 2004, Art and Peg Nadel transferred $3,000 to Annual Bishop Appeal

May 11, 2004, Art and Peg Nadel transferred $5,000 to Diocese of Venice

April 3, 2005, Foundation transferred $5,000 to St. Martha Catholic School

December 6, 2005, Foundation transferred $15,000.00 to St. Paul Parish

2.  In all other respects, the motion should be DENIED.

3.  The amended motion to strike (doc. 37) be DENIED.

IT IS SO REPORTED at Tampa, Florida on July 11, 2011.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal.  28 U.S.C. § 636(b)(1).

cc:    Hon. Elizabeth A. Kovachevich
       Counsel of Record

23